UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSHUA WILLIAM BACHARACH,

Petitioner,

v.

JEREMY BEAN,[1] et al.,

Respondents.

Case No. 3:22-cv-00122-ART-CSD

**MERITS ORDER**

**[ECF No. 26]**

Petitioner Joshua William Bacharach, a Nevada prisoner, has filed a counseled Second-Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, alleging that (1) the trial court erred in not granting a mistrial based on bad act evidence presented by the prosecution and (2) his trial counsel was ineffective. (ECF No. 26 ("Second-Amended Petition").) Respondents answered the Second-Amended Petition, and Bacharach replied. (ECF Nos. 54, 56.) For the reasons discussed below, this Court denies the Second-Amended Petition.

I.    BACKGROUND

A.    Factual background[2]

Numerous neighbors testified that they heard or witnessed gunshots outside their homes in Las Vegas, Nevada, on June 26, 2014, at approximately 10:45pm. Norayma Gonzalez, one of these neighbors, testified that she was on her patio smoking a cigarette when she heard a loud crash. (ECF No. 30-26 at

---

[1] The state corrections department's inmate locator page indicates that Bacharach is incarcerated at High Desert State Prison. Jeremy Bean is the current warden for that facility. At the end of this Order, this Court kindly requests the Clerk of Court to substitute Jeremy Bean as a respondent for Respondent Reubart. *See* Fed. R. Civ. P. 25(d).

[2] This Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the Second-Amended Petition.

161, 165.) Gonzalez ran to where she heard the crash and saw a man running. (*Id.* at 165–67.) Gonzalez then saw the man shoot a gun two or three times. (*Id.* at 167.) Gonzales ran back to her apartment and then saw the man hide in front of a white truck. (*Id.* at 169–70.) Police officers soon arrived, and Gonzalez saw the man shoot at an officer before running off. (*Id.* at 171.) Although it was too dark for Gonzalez to see the man's face, she was able to recognize his body build when police brought the man, who was then in handcuffs, back to the area. (*Id.* at 173.) Gonzalez told the police, "that's him." (*Id.* at 174.)

Las Vegas Metropolitan Police Department ("LVMPD") Officer Ryan McNabb testified that on June 26, 2014, at about 10:45pm, he saw a maroon car driving with its high beams on and "decided to do a car stop on the vehicle for that minor traffic infraction." (ECF No. 30-28 at 9, 15.) As Officer McNabb was getting ready to stop the vehicle, "the driver reached out the driver door and fired a gun up in the air." (*Id.* at 18.) Officer McNabb continued to follow the car, and "the driver fired two more shots" in his direction. (*Id.* at 20.) The car continued to accelerate and ran a red light, and after the car "had gained a bunch of distance" from Officer McNabb, he heard two more shots. (*Id.* at 22.) The car eventually crashed, and Officer McNabb, who was still in his car at this point, saw the driver jump out of the car with a handgun, walk out into the street, and fire the gun "gangster style" at him. (*Id.* at 24.) Officer McNabb put his car in park, and as the man pointed the gun at Officer McNabb another time, Officer McNabb "opened [his] door and jumped out and across [his] hood [he] fired approximately five rounds at him to try to stop or incapacitate him." (*Id.* at 26.) The man took off running, and Officer McNabb followed him, "fir[ing] three more rounds at him." (*Id.* at 27.) Officer McNabb saw a shadow in front of a white truck, but because he heard sirens coming, he decided to stop his pursuit until he had back-up. (*Id.* at 31–32.) Officer McNabb pointed the other officers in the direction that he had last seen the man. (*Id.* at 32.) Officer McNabb confirmed that the man, who had been

apprehended by other officers, was the man who shot at him. (*Id.* at 33, 50.) Officer McNabb recorded the entirety of the incident on his body camera, and that body camera footage was played for the jury. (*See id.* at 34.)

LVMPD K9 Handler Ernest Morgan testified that he responded to the scene. (ECF No. 30-28 at 99, 103.) After Officer Morgan arrived and got his dog out, a lady came out of a house nearby "and told [him] that the guy was in her backyard." (*Id.* at 106.) Officer Morgan and another officer entered the woman's house and exited out her backdoor. (*Id.* at 109.) Once they were on the patio, Officer Morgan's dog "began pulling [him], trying to wrap [him] around the side of the house." (*Id.* at 110.) Officer Morgan saw a man laying down on the side of the house and instructed him to show him his hands. (*Id.* at 112.) Because the man did not respond or comply after several requests, Officer Morgan released the dog, who then bit the man's leg. (*Id.* at 114.) Officer Morgan restrained the dog, and the man—later identified as Bacharach—was handcuffed. (*Id.* at 115.)

Eufrasia Nazaroff, who used to be in a relationship with Bacharach, testified that Bacharach came to her house on the evening of June 26, 2014, asking to borrow her car. (ECF No. 30-26 at 207, 209–210.) Nazaroff agreed, lending Bacharach her maroon Dodge Intrepid. (*Id.* at 211–12, 216.) Nazaroff testified that she had never personally seen Bacharach with any weapons and only saw pictures of weapons on Bacharach's Facebook page when an officer showed them to her. (*Id.* at 216.) Contrarily, Firearms Detective Breck Hodson testified that he spoke with Nazaroff following the shooting, and Nazaroff told him that she had recently seen Bacharach with three firearms. (ECF No. 30-30 at 30, 32.) Nazaroff also told Detective Hodson that Bacharach had a bullet-proof vest on when he left her house on June 26, 2014. (*Id.* at 34.)

The maroon Intrepid, which was impounded at the scene, was registered to Nazaroff, and Bacharach's DNA could not be excluded as being the source of the DNA found on the car's steering wheel. (ECF No. 30-30 at 45, 115.) A firearm

and a bullet-proof vest were found underneath the white truck parked near where Bacharach was apprehended, and Bacharach's thumbprint was discovered on the firearm's magazine. (ECF Nos. 30-28 at 155; 30-30 at 148–149.)

### B.      Procedural background

A jury found Bacharach guilty of attempted murder with the use of a deadly weapon, four counts of discharging a firearm from or within a structure or vehicle, four counts of assault with a deadly weapon, failing to stop on the signal of a police officer, resisting public officer with the use of a firearm, possession of a firearm with an altered or obliterated serial number, and three counts of possession of a firearm by an ex-felon.[3] (ECF No. 30-40.) Bacharach was sentenced to an aggregate term of 747 to 1,884 months (62 to 157 years) in prison. (*Id.* at 4.) Bacharach's judgment of conviction was entered on January 8, 2016. (*Id.*) Bacharach appealed, and the Nevada Court of Appeals affirmed his judgment of conviction on October 19, 2016. (ECF No. 31-3.) Remittitur issued on November 15, 2016. (ECF No. 31-4.)

Bacharach filed his *pro se* state habeas petition and his counseled supplemental petition on November 8, 2017, and February 24, 2020, respectively. (ECF Nos. 31-6, 31-19.) The state court denied Bacharach post-conviction relief on May 5, 2021. (ECF No. 31-23.) Bacharach appealed, and the Nevada Court of Appeals affirmed on February 3, 2022. (ECF No. 31-42.) Remittitur issued on February 28, 2022. (ECF No. 31-43.)

Bacharach commenced this action on or about March 7, 2022. (ECF No. 1.) This Court appointed counsel to represent Bacharach, and Bacharach filed his First-Amended and Second-Amended Petitions on June 2, 2022, and March 21, 2023, respectively. (ECF Nos. 6, 17, 18, 26.) In his Second-Amended Petition, Bacharach presents the following grounds for relief:

---

[3] Bacharach's charges for possession of a firearm by an ex-felon were addressed in a second, bifurcated trial. (ECF No. 30-34.)

1. The trial court erred by not granting a mistrial after the State's witness introduced testimony that she spoke with the gang unit.

2a. His trial counsel failed to object to the trial court's threat.

2b. His trial counsel failed to object to improper expert testimony.

2c. His trial counsel failed to object to the State's improper argument redefining reasonable doubt.

2d. His trial counsel failed to impeach witnesses.

(ECF No. 26.) Respondents moved to dismiss the Second-Amended Petition. (ECF No. 29.) This Court denied the motion. (ECF No. 48.) Respondents answered the Second-Amended Petition on May 20, 2024. (ECF No. 54.) Bacharach replied on May 22, 2025. (ECF No. 66.)

## II.    GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d)[4] sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

[4] Bacharach argues that 28 U.S.C. § 2254(d) is unconstitutional because, under *Loper Bright*, the independent federal judicial cannot defer to other tribunals on legal questions. (ECF No. 66 at 4–9.) In *Loper Bright v. Raimondo*, the Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), dealing with the deference owed to agency interpretations of ambiguous statutes. 603 U.S. 369, 378–79 (2024). While portions of the underlying reasoning in *Loper Bright* could be analogous in the AEDPA context—for example, if *Chevron* deference is contrary to the principles of federal judicial independence, then so too would AEDPA deference—Bacharach fails to demonstrate that *Loper Bright* has been—or will be—extended to overturn AEDPA. Rather, at this time, *Crater v. Galaza*, which held that "[t]he constitutional foundation of § 2254(d)(1) [has been] solidified by the Supreme Court's repeated application of the statute," is binding circuit authority. 491 F.3d 1119, 1129 (9th Cir. 2007). Given that *Crater* is not irreconcilable with *Loper Bright*, this Court rejects Bacharach's constitutional challenge.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the first portion of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Lockyer v. Andrade,* 538 U.S. 63, 73, 75 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). And a state court decision involves an unreasonable application of Supreme Court precedent, within the second portion of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams,* 529 U.S. at 413).

## III. DISCUSSION

### A. Ground 1—testimony about gang unit

In ground 1, Bacharach alleges that the trial court erred by not granting a mistrial after Nazaroff introduced testimony that she spoke with the gang unit. (ECF No. 26 at 5.)

#### 1. Background information

During Nazaroff's direct examination, the prosecution asked her about having seen Bacharach with guns. (ECF No. 30-26 at 212.) Nazaroff testified, "the police had shown me on his Facebook . . . and that's what the police was showing me, the gang unit." (*Id.* at 212–13.) Bacharach's trial counsel objected, and a bench conference was held outside the presence of the jury. (*Id.* at 213.) Bacharach's counsel moved for a mistrial, and the prosecution clarified that the statement was unsolicited and that the officer "wasn't even a gang unit detective" but rather "a firearms detective." (*Id.*) The trial court denied the motion. (*Id.*)

The following day, Bacharach's counsel made a record of her motion for a

mistrial regarding Nazaroff's comment. (ECF No. 30-28 at 7.) The trial court responded, "it was quick enough[, ] no one went into it, no one highlighted it, no one talked about it." (*Id.* at 8.)

### 2. State court determination

In affirming Bacharach's judgment of conviction, the Nevada Court of Appeals held:

> Second, Bacharach argues the district court erred in denying his motion for mistrial following a witness' statement that she spoke with police officers in the gang unit. The denial of a motion for mistrial will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Parker v. State*, 109 Nev. 383, 388-89, 849 P.2d 1062, 1066 (1993). During questioning of the mother of Bacharach's children, the State asked her if she had previously engaged in a discussion with police officers regarding Bacharach's firearms. She responded that she had looked at firearms on Bacharach's Facebook page with the "gang unit." Bacharach moved for a mistrial following this statement. The district court denied the motion, and explained during a discussion outside of the presence of the jury that it denied the motion because the statement was quick, the parties did not highlight it, and the parties did not talk about it further. Given these circumstances, Bacharach does not demonstrate the denial of his motion for mistrial amounted to an abuse of discretion.
>
> Moreover, even assuming the district court committed error, the error was harmless beyond a reasonable doubt because there was strong evidence of his guilt presented at trial. The officer observed Bacharach shooting and driving in a dangerous manner, multiple residents of the neighborhood observed a person matching Bacharach's physical characteristics shooting at the officer and hiding the vest and firearm, Bacharach was discovered hiding in a backyard and refused to follow verbal commands to surrender until bitten by a police dog, Bacharach's DNA could not be excluded from DNA discovered in the vehicle, and Bacharach's thumbprint was discovered on the firearm's magazine. Given the substantial amount of evidence demonstrating Bacharach's guilt and the brief nature of the improper statement regarding viewing Facebook with the gang unit, Bacharach fails to demonstrate he is entitled to relief. *See id.* at 389, 849 P.2d at 1066 (stating "denial of defendant's motion for a mistrial will be deemed harmless error when the prejudicial effect of the statement is not strong and where there is otherwise strong evidence of defendant's guilt.").

(ECF No. 31-3 at 3–4.)

### 3. Standard

"[I]t [is] clear that the introduction of unduly prejudicial evidence could, in certain cases, violate the Due Process Clause." *Andrew v. White*, 604 U.S. 86, 96

(2025). However, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005). "[C]laims deal[ing] with admission of evidence" are "issue[s] of state law," *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764 (1990). The issue before this Court is "whether the state proceedings satisfied due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991). In order for the admission of evidence to provide a basis for habeas relief, the evidence must have "rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). Not only must there be "*no permissible inference the jury may draw from the evidence*," but also the evidence must "be of such quality as necessarily prevents a fair trial." *Jammal*, 926 F.2d at 920 (emphasis in original) (citation omitted).

### 4.   Analysis

Although Nazaroff's comment referencing the "gang unit" detective had no permissible inference, it cannot be concluded that this comment rendered Bacharach's trial fundamentally unfair in violation of his due process rights. As the Nevada Court of Appeals reasonably noted, Nazaroff's comment was brief and isolated, and as such, cannot be considered especially inflammatory. *See Hovey v. Ayers*, 458 F.3d 892, 923 (9th Cir. 2006) (explaining that "even if there are no permissible inferences the jury can draw from the evidence in question, due process is violated only if the evidence is 'of such quality as necessarily prevents a fair trial'" and reasoning that "[w]e have held that admission of far more inflammatory evidence did not violate due process"). Moreover, Detective Hodson testified after Nazaroff and clarified that he interviewed Nazaroff as a firearms directive. (ECF No. 30-30 at 30.) This testimony disproves Nazaroff's "gang unit" testimony, mitigating any unfairness.

Because the Nevada Court of Appeals' determination was neither contrary to, nor an unreasonable application of, federal law and was not based on an unreasonable determination of the facts, Bacharach is not entitled to federal habeas relief for ground 1.

### B.     Ground 2: ineffective assistance of counsel

In ground 2, Bacharach alleges that his trial counsel was ineffective, violating his right to counsel and due process under the Sixth and Fourteenth Amendments. (ECF No. 26 at 7.)

### 1.     Standard

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was

unreasonable is especially difficult. *See Harrington v. Richter*, 562 U.S. 86, 104–05 (2011). In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 2. Ground 2a—objection to trial court's threat

In ground 2a, Bacharach alleges that his trial counsel failed to object to the trial court's threat against Nazaroff. (ECF No. 26 at 7.)

### 1. Background information

On the first day of trial, outside the presence of the jury, the prosecution explained that Nazaroff "has knowledge about all kinds of things [regarding Bacharach] that she's not allowed to talk about," but because Nazaroff refused to meet with the prosecutors before trial, they did "not ha[ve] that conversation with her about all the things she can't talk about." (ECF No. 30-26 at 136.) The prosecution "ask[ed] that the Court admonish her" given that "she probably won't be . . . cooperative" with the prosecution. (*Id.*) Bacharach's trial counsel acknowledged that she did not know what Nazaroff was going to say because Nazaroff had not been in contact with the defense either, but Bacharach's trial counsel agreed that she "want[ed Nazaroff] to be admonished not to make reference to [the Little Locos gang], him being on probation[ or] parole[,] . . . [his] prior convicted felon [status], his moniker . . . [or] references to drugs or weed." (*Id.*) The trial court brought Nazaroff into the courtroom and the following

conversation took place between the judge and Nazaroff:

> Q. You're going to be called to testify today about the incident. You weren't there for the incident.
> A. No.
> Q. You're not to talk about any gang affiliation, any moniker, or nickname. They're going to lead you through along, you wouldn't come in pretrial with them and so they couldn't tell you all this stuff. But I can tell you I've had people violate my order and if you do you'll go to jail today and I'll have to get somebody to come get your child.
> A. Okay.
> Q. So you're going to answer their questions.
> A. Okay.
> Q. You're [sic] not say anything - - well, it's my understanding you're going to testify that the car was yours.
> A. Yes.
> Q. That you saw Mr. Bacharach come get the car, he had a bullet-proof vest on, and you seen [sic] him - -
> A. No. He didn't have no [sic] bullet vest - - bullet - - he didn't have no bullet vest on.
> Q. Did you tell somebody that he did?
> A. No. I said I - - he came and got my car, he had my keys. He did. But he never had a bullet vest on.
> . . .
> Q. We're going to have them lead her through. But if she blurts it out, I got no alternative but to put you in custody, you understand?
> A. What are you talking about?
> Q. If you blurt out something about trying to get him off, say something you're not supposed to say - -
> A. No.
> Q. Tell them . . . about gang affiliation . . . drug use . . . [p]robation . . . [d]rug possession . . . parole . . . [s]moke and dope or anything . . . [o]r parole or probation. You're not to say that. She's going to lead you through a lot of that stuff to keep you away from it. But don't blurt anything out, you understand?
> A. Okay.

(*Id.* at 137–39.)

### 2. State court determination

In affirming the denial of Bacharach's state habeas petition, the Nevada Court of Appeals held:

> First, Bacharach argued his trial counsel was ineffective for failing to object when the trial court threatened a State's witness. "The test of whether a trial judge has acted impermissibly in intimidating a witness turns on whether the judge's comments were so severe that they resulted in the witness's refusal to testify or to totally change testimony." *State v. Martinez*, 653 P.2d 879, 884 (N.M. Ct. App. 1982) (citing *Webb v. Texas*, 409 U.S. 95, 98 (1972); *McNutt v. United States*, 267 F. 670 (8th Cir. 1920)).

The State and Bacharach's counsel informed the trial court that a witness refused to talk with either party prior to trial. The parties requested the trial court to admonish the witness to refrain from informing the jury of information concerning Bacharach's gang affiliation and criminal record during her testimony. The trial court subsequently admonished the witness not to refer to those issues during her testimony, the trial court noted that if the witness violated its order in an attempt to aid Bacharach, it would send her to jail and someone else would have to pick up her child. The witness stated that she understood the trial court's admonishment, and she later testified before the jury.

The trial court's admonishment to the witness did not constitute a threat that resulted in the witness's refusal to testimony. In addition, Bacharach did not demonstrate that the admonishment caused the witness to totally change her testimony. Accordingly, Bacharach failed to demonstrate that the trial court impermissibly intimidated or threatened the witness. Thus, Bacharach did not demonstrate his trial counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome had counsel objected when the trial court admonished the witness. Therefore, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.

(ECF No. 31-42 at 3–4.)

### 3.    Analysis

Although the trial court's admonishment was perhaps excessive, the Nevada Court of Appeals reasonably determined that the trial court did not impermissibly intimidate or threaten Nazaroff. *Cf. Webb v. Texas*, 409 U.S. 95, 98 (1972) ("[T]he unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify."). The trial court's admonishment only regarded Nazaroff avoiding topics which would have resulted in a mistrial. The trial court did not attempt to limit or sway Nazaroff's general testimony. And given that Nazaroff was called by the prosecution rather than the defense, any connection between the trial court's admonishment of Nazaroff and Bacharach's constitutional rights is tenuous.

Additionally, Bacharach's trial counsel joined in on the request for the admonishment, negating a determination that she acted deficiently in not objecting to its administration. If Nazaroff would have testified about any of the bad act issues that she was admonished not to talk about—Bacharach's gang

affiliation, drug use, probation, parole, or drug possession—it would have invariably harmed the defense—indeed, this is the very argument Bacharach makes in ground 1. As such, it was a sound decision for Bacharach's trial counsel to have requested that Nazaroff be admonished and not to have objected when the trial court granted that request. *Strickland*, 466 U.S. at 688 (explaining that "[j]udicial scrutiny of counsel's performance must be highly deferential"); *see also Correll v. Ryan*, 539 F.3d 938, 948 (9th Cir. 2008) ("[U]nder *Strickland*, we must defer to trial counsel's strategic decisions.")

Because the Nevada Court of Appeals' determination was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts, Bacharach is not entitled to federal habeas relief for ground 2a.

### 3.   Ground 2b—objection to detective's improper testimony

In ground 2b, Bacharach alleges that his trial counsel failed to object to Detective Ryan Jaeger's improper expert testimony. (ECF No. 26 at 9.)

### 1.   Background information

On the third day of trial, the prosecution called LVMPD Detective Jaeger, who was assigned to the Force Investigation Team at the time of the shooting. (ECF No. 30-30 at 96.) Detective Jaeger testified that a gunshot residue test was not conducted on Bacharach because "[g]unshot residue just isn't reliable. I've been a detective almost ten years now. I don't think I've ever collected gunshot residue because it's just so erratic. It can be transferred really easy and it's just not really reliable." (*Id.* at 106.) Detective Jaeger also testified that there are "[m]ajor contamination issues" and possible "false positives" associated with gunshot residue. (*Id.*) To highlight this concern, Detective Jaeger explained the following: "[P]olice officers . . . stand shoulder to shoulder at a firing range and . . . shoot at the same time and that gunshot residue spreads in the air. It can get on their equipment, . . . hands, . . . clothes, and as soon as someone's

13

touched that residue, it is passed." (*Id.* at 106–07.)

Next, Detective Jaeger testified about bullet casings, explaining the following:

> Casings are really unpredictable. Just picture the way most people hold a handgun. If they're holding a handgun perfectly straight up and down, the casing should go up and to the right. But as soon as you throw a motion in there, if you [indiscernible] the gun this way they're going straight back. If you're leaning this way, the casings are going over here. If you throw movement in there, if you throw different surfaces that the casings hit. On this case they were on a freeway that hadn't been shut down yet, so cars are coming by and moving the cart casings. Cart casings are very random on where you find them.

(*Id.* at 110.)

Third, Detective Jaeger testified about bullet impressions, analogizing them with tennis balls: "the greater the angle the higher the bounce." (*Id.* at 118.) Detective Jaeger testified about one specific impact, stating that the bullet "scrapes the window enough to not break it but to leave the mark." (*Id.*)

Finally, Detective Jaeger testified about his theory about where some of the missing bullet casings went:

> It's my theory that the casing that we couldn't find were stuck in the treads on the tires of a patrol car or in someone's boots. They're kind of like rocks and sometimes you get a rock stuck in the tread of your shoe. We sent out a message to all the patrol guys that responded at Northeast Area Command to check their car tires to see if there was any casings there and to check their boots when they got back in to see if there was any shell casings stuck in them and we didn't recover anymore.

(*Id.* at 124.)

### 2.   State court determination

In affirming the denial of Bacharach's state habeas petition, the Nevada Court of Appeals held:

> Second, Bacharach argued his trial counsel was ineffective for failing to object when a detective improperly offered unnoticed expert opinion testimony concerning gunshot residue, cartridge casings, bulletproof vests, and bullet impacts. This court previously concluded that a substantial amount of evidence demonstrating Bacharach's guilt was presented at trial. *Bacharach v. State*, No. 69677, 2016 WL 6560416, *1 (Nev. Ct. App. 2016) (Order of

Affirmance). That evidence included a police officer's observation of Bacharach shooting from a vehicle and driving in a dangerous manner, residents of the relevant neighborhood that observed a person matching Bacharach's characteristics shooting at the officer and hiding items, the discovery of Bacharach hiding in a backyard, and the discovery of his fingerprint on a firearm magazine that was recovered from the crime scene. In light of the substantial amount of evidence of Bacharach's guilt presented at trial, Bacharach failed to demonstrate a reasonable probability of a different outcome had counsel objected to admission of the detective's opinion testimony. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 31-42 at 4–5.)

### 3.    Analysis

Nevada law defines an expert witness as someone having "scientific, technical or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." Nev. Rev. Stat. § 50.275. Contrarily, a lay witness may testify to "opinions or inferences" that are "[r]ationally based on the perception of the witness; and . . . [h]elpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." Nev. Rev. Stat. § 50.265. According to Nevada law, "[t]he key to determining whether testimony about information . . . constitutes lay or expert testimony lies with a careful consideration of the substance of the testimony," namely, "does the testimony concern information within the common knowledge of or capable of perception by the average layperson or does it require some specialized knowledge or skill beyond the realm of everyday experience?" *Burnside v. State*, 352 P.3d 627, 636 (Nev. 2015).

Detective Jaeger's testimony may have bordered on the line between expert and lay witness testimony. This is especially true regarding his gunshot residue testimony, which may have risen to the level of being based on "scientific, technical or other specialized knowledge" under Nevada Revised Statute § 50.275. Thus, Bacharach's trial counsel may have had a colorable basis for an objection under Nevada law.

However, as the Nevada Court of Appeals reasonably determined, there was

an abundance of evidence demonstrating Bacharach's guilt, so Bacharach fails to show a reasonable probability of a different result at trial had his trial counsel successfully objected. In fact, there was direct evidence of Bacharach's guilt: his fingerprint was on a firearm magazine that was recovered from the crime scene and his DNA was found in the car used in the shooting. There was eyewitness evidence of Bacharach's guilt: Officer McNabb and various residence of the neighborhood testified about Bacharach matching the description of the shooter. And there was circumstantial evidence of Bacharach's guilt: Bacharach hid in a backyard near the crime scene and failed to respond or comply with police requests.

Because the Nevada Court of Appeals' determination was neither contrary to, nor an unreasonable application of, *Strickland*'s prejudice prong and was not based on an unreasonable determination of the facts, Bacharach is not entitled to federal habeas relief for ground 2b.

### 4.      Ground 2c—objection to reasonable doubt argument

In ground 2c, Bacharach alleges that his trial counsel failed to object to the prosecution's improper argument redefining reasonable doubt. (ECF No. 26 at 13.)

### 1.      Background information

During closing argument, the prosecution made the following statement about the reasonable doubt standard:

> As in every criminal case across the country, the State has the burden to prove the case beyond a reasonable doubt. And that means that we must prove every element of the offenses charged. Every element of the offenses, not every fact that could be brought up. The element of the offenses are as - - they are outlined within your packet and you have the instructions as to what constitutes each of the offenses.
> It doesn't mean we have to prove beyond a reasonable doubt that that shirt is highlighter yellow or highlighter green. That's not an element of the offense.
> . . . .
> Reasonable doubt is not beyond all doubt. It is reasonable doubt, not based on speculation, not based on mere possibility.

Consider that. Keep that in mind when you're deliberating.

So, we are proving beyond a reasonable doubt both that crimes were committed and that it's the Defendant who committed these crimes.

. . . [I]f he committed one of those crimes, he committed all of those crimes. It's not that one person could have committed the initial discharging from a vehicle and then there's a different person who's committing the assault with deadly weapon at the corner of Carey and Dolly. If he's guilty of one, he's guilty of all in the sense of proof that it is him in identity; not saying that we have necessarily met all of the elements. We're going to discuss that separately - - consider each of the charges separately.

But, if we've proven beyond a reasonable doubt that he committed one of them then it must be his identity as to all of them. And we have. These factors all come in together and show that there is no one else. There was no one else found in the area.

(ECF No. 30-30 at 165–67.)

### 2.    State court determination

In affirming the denial of Bacharach's state habeas petition, the Nevada Court of Appeals held:

Third, Bacharach argued his trial counsel was ineffective when the State improperly discussed the definition of the reasonable doubt standard during its closing argument. The Nevada Supreme Court "has repeatedly cautioned the district courts and attorneys not to attempt to quantify, supplement, or clarify the statutorily prescribed standard" of reasonable doubt. *Daniel v. State*, 119 Nev. 498, 521, 78 P.3d 890, 905 (2003) (quotation marks and emphasis omitted). However, "[c]ounsel may argue that evidence and theories in the case before the jury either amount to or fall short of" the statutory definition of reasonable doubt. *Id.* at 521, 78 P.3d at 906.

During its closing argument, the State noted that multiple witnesses identified Bacharach as the perpetrator of the crimes. The State argued, based on its identification testimony and facts surrounding the crimes, that the jury should find that Bacharach was identified as the perpetrator of the crimes and, therefore, that he committed all of the crimes beyond a reasonable doubt. The State did not attempt to quantify, supplement, or clarify the statutorily prescribed standard of reasonable doubt. Accordingly, Bacharach did not demonstrate that the State's closing argument was improper. Thus, Bacharach failed to demonstrate his counsel's performance fell below an objective standard of reasonableness by failing to object during closing argument or a reasonable probability of a different outcome at trial had counsel done so. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 31-42 at 5–6.)

### 3.    Analysis

Bacharach contends that the prosecution argued "a blanket presumption

of guilt for all the charged crimes" by "misrepresenting that finding guilt on one count applied to all other counts." (ECF No. 26 at 14.) This contention is faulty. As the Nevada Court of Appeals reasonably held, the statement at issue here did not misstate the reasonable doubt standard. *See* Nev. Rev. Stat. § 175.211(1) ("A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation."). Rather, because the identity of the suspect was at issue and because there was no dispute about there not being a second individual involved, the prosecution merely argued that if the jury found that Bacharach was the individual involved in one of the charges, then he was the individual involved in all the charges. The prosecution did not make a sweeping argument that guilt as to one charge necessarily meant guilt on all charges. This conclusion is supported by the prosecution's clarifying remark that proving identify for each of the charges did not equate to "saying that we have necessarily met all of the elements" of the charges. Consequently, given that there was nothing improper about the prosecution's statements, the Nevada Court of Appeals reasonably concluded that Bacharach fails to demonstrate ineffectiveness on the part of his trial counsel.

Because the Nevada Court of Appeals' determination was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts, Bacharach is not entitled to federal habeas relief for ground 2c.

### 5.   Ground 2d—impeachment of witness

In ground 2d, Bacharach alleges that his trial counsel failed to impeach

18

witnesses—namely, Gonzalez, Jose Chavez, and Ricardo Quesada—who could barely see the shooter at the time of the shootings yet claimed to positively identify the suspect arrested by the police. (ECF No. 26 at 14–15.)

### 1.    Background information

Gonzalez testified that the man who the police had in custody after the shooting was the shooter she had seen because even though she "couldn't take a look at the face or recognize the face or anything like that, . . . it was the same body complex." (ECF No. 30-26 at 173.) During cross-examination, Gonzalez confirmed that (1) it was "dark except for [a] traffic light" at the time of the shooting, and (2) the man in custody was not wearing the white shirt she had previously seen the shooter wearing. (*Id.* at 175, 181.)

Jose Quezada Chavez similarly testified that the man who the police had in custody after the shooting was the man he had seen shooting the gun and who was in front of the white truck. (ECF No. 30-26 at 195.) During cross-examination, Chavez confirmed that (1) it was dark out, (2) he "couldn't see the person's face" but rather could only see a "[s]hadow," and (3) he never actually identified the man but rather "the officers told [him] that [the person being arrested] was the person who was the suspect." (*Id.* at 198, 201, 202.)

Ricardo Quesada testified that he "saw a police officer handcuffing [the shooter] and putting him in a car." (ECF No. 30-26 at 223.) Quesada knew "that it was the same individual" he had seen during the shooting "[b]ecause [he] remember[ed] he had the exact same hair." (*Id.*) During cross-examination, Quesada confirmed that (1) it was dark outside, (2) he could not see the man's face, (3) he "couldn't get a description about what he . . . looked like" other than his long hair, and (4) when he told a police officer that the man being arrested was the shooter, the man was down the street and was already in handcuffs. (*Id.* at 224, 226, 228.)

## 2.   State court determination

In affirming the denial of Bacharach's state habeas petition, the Nevada Court of Appeals held:

> Fourth, Bacharach argued his trial counsel was ineffective for failing to impeach witnesses' testimonies with their inconsistent statements. Bacharach appeared to assert that counsel should have questioned witnesses in a different manner concerning their identifications of him as the perpetrator of the offenses. Bacharach did not identify a particular witness that should have been questioned concerning inconsistent statements. Thus, Bacharach did not support this claim with specific factual allegations. Moreover, the record demonstrates that counsel questioned multiple witnesses concerning their version of events and challenged their abilities to perceive the events or identify Bacharach as the perpetrator of the offenses. Accordingly, Bacharach did not demonstrate that counsel's performance fell below an objective standard of reasonableness. Bacharach also did not demonstrate a reasonable probability of a different outcome had counsel further questioned witnesses concerning their identification testimonies or prior statements. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 31-42 at 6.)

## 3.   Analysis

Bacharach argues that his trial counsel failed to cross-examine Gonzalez, Chavez, and Quesada about the possibility that the suspect in police custody was not actually the shooter. (ECF No. 66 at 32–33.) It is true that Bacharach's trial counsel did not ask this specific question to these witnesses. However, as the Nevada Court of Appeals reasonably concluded, Bacharach's trial counsel generally challenged these witnesses' ability to perceive the events and identify Bacharach as the shooter, casting doubt on their identifications. Further, as the Nevada Court of Appeals also reasonably concluded, Bacharach fails to demonstrate any prejudice. *See Doe v. Ayers*, 782 F.3d 425, 431 (9th Cir. 2015) (concluding that the defendant's trial counsel "could have done a much better job of impeaching [the witness], . . . but the failures regarding impeachment of [the witness] are of comparatively little consequence"). Given that the essence of Bacharach's trial counsel's questions went to the question of whether the

witnesses correctly identified the suspect—Bacharach—as the shooter, it is mere speculation that deeper questioning in this regard would have returned anything fruitful. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation.").

Because the Nevada Court of Appeals' determination was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts, Bacharach is not entitled to federal habeas relief for ground 2d.[5]

## IV.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to Bacharach. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a Certificate of Appealability. This Court has *sua sponte* evaluated the claims within the Second-Amended Petition for suitability for the issuance of a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473,

---

[5] Bacharach generally requests that this Court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in" his Second-Amended Petition. (ECF No. 26 at 18.) This Court denies Bacharach's request. First, Bacharach does not explain what evidence would be presented at an evidentiary hearing. Second, this Court has already determined that *de novo* review is unwarranted for any of the grounds within the Second-Amended Petition, so supplementing the record is prohibited. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). And third, this Court has already determined that Bacharach is not entitled to relief and further factual development would not affect this Court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record . . . otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a Certificate of Appealability is appropriate only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.* Applying these standards, this Court finds that a Certificate of Appealability is unwarranted.

## V.    CONCLUSION

It is therefore ordered that the Second-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [ECF No. 26] is denied.

It is further ordered that a Certificate of Appealability is denied.

It is further ordered that the Clerk of Court (1) substitute Jeremy Bean for Respondent Reubart, (2) enter judgment, and (3) close this case.

DATED THIS 26th day of March, 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

22